Mrs. Harlan H. HILL *v.* J. H. BROWN

84-84                                        672 S.W.2d 330

Supreme Court of Arkansas
Opinion delivered July 16, 1984

*W. Dent Gitchel,* for appellant.

*Cearley, Mitchell and Roachell,* by: *Michael W. Mitchell;* and *Haskins Law Firm,* by: *John T. Haskins,* for appellee.

GEORGE ROSE SMITH, Justice. J. H. Brown brought this suit in 1982 to obtain partition of a 55-acre tract of land in Saline County. The complaint alleged that Brown and Dr. Harlan H. Hill owned the land as tenants in common at the time of Dr. Hill's death in 1965, that Mrs. Hill received her husband's half interest under his will, and that Brown was entitled to partition. Mrs. Hill's answer denied that Brown had any interest in the land and asserted title in Mrs. Hill by adverse possession and by reason of Dr. Hill's having acquired whatever interest Brown had had in the property.

Upon trial the chancellor found the issues in Brown's favor. The court ordered partition by public sale, with Mrs. Hill to be reimbursed for her mortgage and tax payments. For reversal Mrs. Hill argues that she proved title by adverse possession and the court erred twice in excluding testimony about Dr. Hill's acquisition of Brown's half interest. Our jurisdiction is under Rule 29 (1) (c), an issue being the interpretation of a Uniform Rule of Evidence.

First, the proof is insufficient to sustain a claim of adverse possession as between tenants in common. Brown and Hill bought the property in 1963, each paying half of the $4,000 down payment. Several monthly payments were made from a Brown & Hill partnership bank account. The record title was still in the two names at Hill's death in 1965. Mrs. Hill, however, included the entire tract in her inventory of the estate, paid the outstanding mortgage, and has paid the taxes every year. Although the land is fenced, it does not have a dwelling on it, is largely pastureland, and has not been in anyone's actual possession for seven successive years.

Tenants in common each have an equal right to

possession; so one tenant's possession is deemed permissive and does not become adverse until he gives actual notice of a hostile claim to his cotenant or commits such open acts of hostility that knowledge of his adverse claim must be presumed. *Hirsch* v. *Patterson*, 269 Ark. 532, 601 S.W.2d 879 (1980). We infer from the inventory that Mrs. Hill and Griffin Smith, the attorney for the estate, did not know the state of the record title. Mrs. Hill herself made no claim of ownership to Brown. Smith testified that after Hill's death he talked to Brown about some farm equipment, that he told Brown that the estate did not recognize any interest or claim he might have, and that "I did tell him that if he had any evidence of ownership, I'd be happy to look it over and there was no intention to bar him from any rights that he might have." Those statements do not amount to the flat assertion of absolute ownership that the law requires as between tenants in common.

The two remaining arguments for reversal pertain to the admissibility of Mrs. Hill's hearsay evidence that Hill purchased Brown's half interest. Brown denies such a purchase. He testified that he used to see Hill two or three times a week and had a good relationship with him. He said that after the two men bought the land he cleared up the property, had a pond put in, sowed and fertilized grass in the pasture, repaired the fences, and installed a gate. He said Hill told him just before his death that he need not make payments on the note or the taxes.

Counsel for Mrs. Hill first sought to rebut Brown's proof by calling Mrs. Hill and Smith to testify that after Hill's death they had each seen a $2,500 check among Hill's papers, with a notation on the check or on the stub that it was for Brown's interest in the land. That testimony was inadmissible. Its only purpose was to show that Hill had made a written statement on the check or stub that he had bought Brown's interest in the land. Such a statement falls squarely within the statutory definition of hearsay and was properly excluded. Uniform Evidence Rule 801, Ark. Stat. Ann. § 28-1001 (Repl. 1979).

Second, it is argued that the court should have allowed

Mrs. Hill and Smith to testify that before Hill's death he told each of them that he had bought Brown's interest in the land. Counsel concedes that the proffered proof is hearsay and does not fall within any of the common-law exceptions to the hearsay rule that are enumerated in Uniform Rules 803 and 804. It is insisted, however, that Hill's statements should be treated as coming within a brand-new exception inserted at the end of both those Rules. The new paragraphs read as follows:

> Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (i) the statement is offered as evidence of a material fact; (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (iii) the general purposes of these rules and the interests of justice will best be served by admission of the statements into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

The new paragraph does not spell out a specific exception to the general prohibition against hearsay. Instead, it lists several matters to be considered as conditions to the admissibility of hearsay not falling within a recognized exception. The substance of this catch-all provision was added by Congress when it adopted the Federal Rules of Evidence. The provision was not intended to throw open a wide door for the entry of judicially created exceptions to the hearsay rule. To the contrary, the new exception is to be narrowly construed. That is made plain by this paragraph in the report of the Senate's Advisory Committee:

> It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional

circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804 (b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule.

S. Rep. No. 93-1277, 93rd Cong., 2nd Sess. 1, 20, *reprinted* in 1974 U.S. Code Cong. & Ad. News 7051, 7066.

The cases that have been decided under the new rules have given weight to the views expressed by the congressional committee. Two cases in particular deserve mention. The first preceded the Federal Rules, but it was cited by the committee as illustrative of the purpose of the residual exception. *Dallas County* v. *Commercial Union Assur. Co.,* 286 F.2d 388 (5th Cir. 1961). The issue was whether or not charred timbers in the dome of a courthouse, which had collapsed, had been burned by lightning. The court approved the introduction of a newspaper account, printed 58 years earlier, describing a fire in the new courthouse being constructed. Although the news story did not fit any exception to the hearsay rule, the court admitted it and stressed its obvious trustworthiness: "It is inconceivable to us that a newspaper reporter in a small town would report there was a fire in the dome of the new courthouse — if there had been no fire."

A second case, decided under the Federal Rules, is *United States* v. *Medico,* 557 F.2d 309 (2nd Cir. 1977). There a bank employee was allowed to testify that about five minutes after the bank had been robbed, he answered a knock on the bank's door by a man he merely recognized as a bank customer. The bank employee, upon opening the door, saw a young man sitting outside in a car giving the

customer the make and license number of the getaway car. The customer relayed the information to the witness, who wrote it down on his checkbook. Although the identity of the bank customer and of the young man could not be determined, the court emphasized the reliability and probable accuracy of the witness's testimony in allowing him to narrate the incident.

Both these cases carried out the intent giving rise to the new residual exception. All the common-law exceptions to the hearsay rule are based either upon necessity or upon some compelling reason for attaching more than average credibility to the hearsay. A statement against interest, for example, is accepted because whatever a person says to his own disadvantage is apt to be true. Consequently any new exception must have, in the language of the Rule, circumstantial guarantees of trustworthiness equivalent to those supporting the common-law exceptions.

In the case at bar the testimony rejected in the trial court would have shown that Hill had said he had acquired Brown's interest. Far from such a statement's being attended by inherent guarantees of its trustworthiness, the opposite is true. Hill's statement was self-serving. He could not be cross-examined about it. The proffered hearsay could readily have been fabricated. We discern no basis for applying the new residual exception in this case. The trial court was right in excluding the testimony.

Affirmed.

DUDLEY, J., not participating.